**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:25-cr-52** |
| **Plaintiff,** | |
| | **JUDGE SARGUS** |
| **vs.** | |
| | **GOVERNMENT'S SENTENCING** |
| **ROBERT BERNDT,** | **MEMORANDUM** |
| **Defendant.** | |

Defendant Robert Berndt has pleaded guilty to conspiring to create and distribute animal crush videos, in violation of 18 U.S. Code § 371. After accounting for his role within the conspiracy, Berndt's United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range is 37 – 46 months of incarceration. A sentence of 46 months is the minimum sentence that will accomplish the goals of sentencing, although there are also facts from which this Court could find that an upward variance is warranted.

**FACTUAL BACKGROUND**

The offense conduct is accurately set forth in paragraphs 12 through 40 of the Pre-Sentence Investigation Report (PSR), incorporated herein by reference. The Government respectfully advises the Court and public readers that the details of the offense are disturbing, and that graphic statements, images, and descriptions follow.

**PLEA AGREEMENT AND APPLICABLE SENTENCING GUIDELINES**

On May 6, 2025, Robert Berndt pleaded guilty to a one-count information charging him with conspiring to create and distribute animal crush videos.

As part of the plea agreement, the parties agreed to the following partial calculation under the Sentencing Guidelines:

1

- U.S.S.G. § 2G3.1                    10 (base offense level for "obscenity")
- U.S.S.G. § 2G3.1(b)(1)(B)       +5 (distribution for valuable consideration)
- U.S.S.G. § 2G3.1(b)(3)            +2 (use of a computer or interactive computer service)
- U.S.S.G. § 2G3.1(b)(4)            +4 (portrayal of sadistic or masochistic conduct)

The parties did not reach an agreement as to any enhancement under U.S.S.G. § 3B1.1. For the reasons set forth in the PSR, as well as the reasons below, the government is requesting a 3-level enhancement based on Berndt's role as a manager or supervisor of the conduct in question.

The Government does not oppose a 2-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's acceptance of responsibility and an additional 1-level decrease pursuant to U.S.S.G. § 3E1.1(b) in recognition of the Defendant's timely notification of his intention to plead guilty, provided that the Defendant continues to demonstrate compliance with the terms of § 3E1.1.

_Berndt's Role in the Offense_

The Government agrees with the U.S. Probation Officer that Defendant Robert Berndt should receive a 3-level enhancement for acting as a manager or supervisor of the conduct at issue. Berndt exerted decision-making authority over others within the groups, acted with significant authority in planning and organizing the groups, and exercised sole discretion in deciding whom to remove from the groups. _United States v. Lalonde,_ 509 F.3d 750, 765 (6th Cir. 2007) ("[A] defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.") (_quoting United States v. Vandeberg_, 201 F.3d 805, 811 (6th Cir. 2000)).

Although Berndt suggests that his role was no different than others within the group, this is not born out by the evidence. As demonstrated in the chat excerpts attached to the Government's response to the Defendant's objections to the initial PSR, Berndt was personally

2

responsible for creating some of the groups, establishing the rules of behavior within the groups, and then enforcing those rules after perceived violations. While it is true that Berndt shared his Administrator privileges with certain members of the group, such as Garret Fitzgerald and Katrina Favret, it is likewise true that he had the ability to, and did remove, these members from the groups if Berndt himself believed them to be a security threat. Such demonstrations of authority are more than sufficient to justify a three-level upward enhancement under U.S.S.G. §3B1.1.

For these reasons, Berndt should receive a three-level increase for acting as a manager or supervisor of criminal conduct involving five or more participants.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

A sentence at the high end of the guidelines is the minimum necessary to achieve the goals of sentencing. Such a sentence is necessary in light of the considerations set out in 18 U.S.C. § 3553(a). In particular, the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, the need for the sentence imposed to afford adequate deterrence to criminal conduct, the need for the sentence imposed to protect the public from further crimes of the defendant, and the need for the sentence imposed to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### *The Violent Acts Perpetuated by the Defendant*

Beginning no later than June 2021 and continuing until he was approached by law enforcement in 2024, Robert Berndt (a/k/a "Requiem Rhythm," a/k/a "RR") belonged to an association of people who gathered online to solicit, share, and discuss videos of monkeys being

tortured and sexually abused. Six of the core members have now been charged (Ronald Bedra, Garrett Fitzgerald, Katrina Favret, Robert Craig, and Joe Herrera). Among this group, Berndt's focus on the most grotesque forms of torture was unsurpassed. Over and over again, Berndt expressed a desire for more extreme torture that resulted in more pain, experienced over a longer period of time. Below are some examples of Berndt's comments within the groups:

- **"The first burning was awesome because it was a little rat and he took time. This one he poured a shit ton[ne] of whatever that liquid is on it and bonfired it."**

- **It think that [VO] doesn't get that we want to see these things hobbled… miserable… suffering… over a period of time**

- **It would also have been awesome for that rat to be suffering second-and-third degree burns on it's body while it sits alone in it's cage or inside the tin can**

- **Like I want to see them maimed and miserable**
  **Killing them is great, of course, but it puts an end to it**
  **While I want them to suffer longer**

In addition to expressing a desire for the monkeys to experience more pain generally, Berndt's requests very often related to the monkey's genitals. The following comments illustrate this tendency:

- **I'd like to see him DESTROY a female monkey's itty bitty clitty bump,.. or just cut it off**

- **Haha could get a male "excited" and when the pinky winky is all out to play… SNIP**
  **cut a bit off and repeat until nothing left**

- **Like I would have torched it's dick until it turned into a crisp**

And then I'd have taken a video of the monkey "exploring" his wee wee and it falling off in his hands and him eating it

- And when he pulls out the scissors I was practically shouting at my screen once rhey[sic] got the monkey's foreskin gone and they got him excited so his penis came out to FUCKING CUT THAT OFF

- Same thing for the burning. The monkey got excited DURING.. it needed to be burned AGAIN ON IT'S DICK

- Awesome!! I thought for a sec they only cut the foreskin but looks like they got a bit of the head
  That won't stop the rape from these nasty fiends.
  It is nice they spent some time cutting through
  Should have made captain winky come out first

- Take a monkey and TWIST HIS DICK (what?!) TWIST HIS DICK… THE OLLLLL DICK TWIST

- Could we get him to jam the monkeys tail up it's ass?... Maybe with a chopstick or something to help guide the tail in.

- or pulling the penis or flap as far as it'll go and then some… and you know sometimes these monkeys GET OFF from the pain right?!

- Jam[] a plug up its ass and clip[] it's winky shut. It literally will squeal and scream when it tries to go to the bathroom and can't haha

- Plug the asshole and clip shut the urinary outlet so they literally cannot go until you let them

- He can take like.. boiling water into a syringe

5

**And then pump it up the monkey's asshole or bitty clitty**

And these statements were not just bluster. The videos commissioned and shared by the group included multiple videos of a monkey having their genitals cut off, videos of monkeys having their genitals burned, videos of monkeys having limbs cut off, and videos of monkeys having a heated screwdriver pressed against its genitals and anus, among others. The Defendant's celebration of these videos, when contrasted with the sheer brutality attendant to them, is difficult to fathom. This conduct is harmful to the monkeys, to the videographers, and to society. At a minimum, this behavior warrants a sentence at the high end of the guideline range.

_The Victims of the Offense_

The immediate victims of the Defendant's conduct were the monkeys that were tortured at the request of the Defendant and his co-conspirators. The monkeys observed by investigators, including the screwdriver video, appear to be long-tailed macaques. Below are two photographs of long-tailed macaques for reference:



*Photographs courtesy of University of Wisconsin National Primate Research Center*

6

This species is native to Southeast Asia, including Indonesia. The average lifespan of a long-tailed macaque is 31 years, and they feed on fruit, roots, crabs, and insects. They sleep in trees, often huddled in large groups for warmth. Depending on their habitat, these creatures spend their days foraging in mangrove swamps, collecting fruit, swimming in rivers, and swinging through trees.[1]

The individual monkeys that the Defendant subjected to prolonged torture were generally baby or juvenile macaques. They were sometimes dressed up in children's clothing or diapers prior to being tortured. The Defendant and his co-conspirators often expressed a preference for monkeys that had been coddled prior to being tortured. In one instance, Berndt and co-conspirator Ronald Bedra discussed the possibility of purchasing a baby monkey to torture. Berndt sent the following image of the monkey, which was advertised for sale, to Bedra:



---

[1] *Long-tailed macaque fact sheet*, UNIVERSITY OF WISCONSIN NATIONAL PRIMATE RESEARCH CENTER (last accessed Sep. 25, 2024), *available at* https://primate.wisc.edu/primate-info-net/pin-factsheets/pin-factsheet-long-tailed-macaque/#evolution-ecology

Afterward Berndt and Bedra exchanged the following messages:

- **Berndt: He's apparently a real super clinger. Screeches if he's not touching a human**

- **Bedra: That sounds pppppeeeeeerrrrrfect**

  **...**

- **Berndt: I need to wake his ass up with a clamp over his penis and a plug up his ass. That's only the beginning of his life**

- **Bedra: If you agree to buy that thing, how long until you have it?**

  **And how old is it?**

  **Fuck, I wanna drive over and visit the day you get him LOL**

- **Berndt: I'd get it this weekend**

  **It has two teeth**

  **So like 4-6 weeks**

  **I wish I could get it younger but that's only gonna happen from hunting**

  **The breeders don't remove them from the mother until 4 weeks**

  **Hahah you would be welcome to visit and hang out**

  **Like watching surgical theater**

In another instance, Bedra and Berndt (a/k/a "RR") discussed which torture videos featured the youngest monkeys:









In addition, the monkeys were generally tied up in such a way that they had no ability to escape the torture and thus were entirely defenseless.

*The Human Impacts of the Offense*

When fashioning a sentence, this Court should also consider the psychological harm undoubtedly suffered by those conscripted into creating the videos by the Defendant and his co-conspirators.[2] As demonstrated by the messages below, the co-conspirators knew that these individuals (known as "videographers" or "VOs"), who were generally Indonesian, were poor and were capable of being manipulated into performing acts of grotesque violence for incredibly small sums of money. For instance, Berndt proposed the following to a prospective videographer:

> **Berndt: $10 for 5 minute video request is fair. $5 up front and $5 paid when you complete video request.**

In another chat, Berndt emphasized the economic need of a videographer, sending the following message to the group:

> **Berndt: As much as you think you need him for videos he NEEDS that money**

Another common discussion topic among the co-conspirators was their displeasure with the videographers and their belief that the videographers had not provided a sufficiently gruesome video. The following is an example of such a conversation after a videographer sent a video that was not to Berndt's liking. In the video,

---

[2] The Government is not suggesting that the videographers, who knowingly participated in the conduct in question, are victims for purposes of any Guidelines enhancement. *See, e.g., United States v. Emor,* 850 F.Supp.2d 176, 209 (D.D.C. 2012) (holding, in the context of the Mandatory Victim Restitution Act that "a number of courts have held that a party who participated in the defendant's offense cannot be considered a 'victim' under the statute."). *See also The Attorney General Guidelines for Victim and Witness Assistance*, U.S. Department of Justice ("A person's knowing and willful participation in a…criminal scheme or transaction…generally negates a determination of direct harm from the crimes being investigated.").

the videographer appears to break the monkey's fingers with pliers, break its arms with pliers, grab its genitals with pliers, cut its genitals, break its leg with pliers, tie the monkey to a tree, and set its genitals on fire:







and when he pulls out the
scissors | Oct 11, 2021 | y
shouting at my screen once rhey
got the monkey's foreskin gone
and they got him excited so his
penis came out to FUCKING CUT
THAT OFF                    12:50 am

👍

same thing for the burning.. the
monkey got excited DURING.. it
needed to be burned AGAIN ON
IT'S DICK

he gets ZERO points and if he
fucking drowned that monkey in
the river or some bullshit

tell him he was about to get a
BUNCH of money from SEVERAL
OF US and he FUCKED THAT UP

HE'S GOT SOME LAME EXCUSE
EVERY TIME

MONKEY KING DEMON
POSSESSION AND SHAMAN
SHIT

---

EVERY TIME

MONKEY KING DEMON
POSSESSION AND SHAMAN
SHIT

"NOT UNDERSTANDING"
BULLSHIT

AND "PEOPLE KNOW BRO"

WHO FUCKING CARES MONKEY
IS VERMIN

I BET HIS VILLAGERS KILL
MONKEY IN THE FIELDS IF THEY
SEE THEM AND EAT THEM

sorry for caps

i am angry at ███ for being a
shit and how mch money you
sent him

it is seriously fucked up

please be sure to tell him he
fucked up his chance for more
money

13



In another example, Berndt expressed his hatred for a VO after a video was not to his liking:

> **Berndt: I am angry at [VO1] for being a shit and how much money you sent him. It is seriously fucked up. Please be sure to tell him he fucked up his chance for more money.**

14

**...**

**Berndt: I hate [VO1] like hes a monkey**

**Berndt: Nasty sniveling lying thieving greedy lazy gross fucker**

**Berndt: Monyet[3] [VO1]**

<u>*Sentences in Other Animal Crush Offenses and Similar Offenses*</u>

To date, there have been several cases sentenced involving conduct similar to that committed by the Defendant. Of the defendants convicted and sentenced for commissioning violent monkey crush videos, two have been sentenced in the Southern District of Ohio: Ronald Bedra, the defendant's co-conspirator, who was sentenced to 54 months' incarceration, and Giancarlo Morelli, who received a sentence of 48 months' incarceration. 1:24-cr-66 (S.D. Ohio Sep. 30, 2025). Other individuals convicted of monkey torture video-related offenses have received sentences of 51 months, *United States v. Devilbiss*, 3:23-cr-153, (MDFL, June 18, 2024); 48 months, *United States v. Noble*, 6:23-cr-181 (D. Ore. April 24, 2024); 40 months, *United States v. Macartney*, 2:24-cr-25 (E.D.Va. Oct. 2, 2024); 30 months, *United States v. Hacker,* 5:25-cr-00002 (E.D. Ky. May 13, 2025) and 366 days, *United States v. Herrera,* 3:23-cr-76 (W.D. Wisc. Dec. 20, 2023). Another individual, Brent Justice, was sentenced to 57 months' incarceration for producing and distributing videos of puppies, chickens, and kittens being tortured, *United States v. Justice*, 4:12-cr-731 (S.D. Tex. Aug. 18, 2016), although Justice had already been sentenced to 50 years' imprisonment at the state level.[4]

---

[3] Note: "monyet" is the Indonesian word for "monkey."

[4] Justice was later re-sentenced to 20 years' incarceration in Texas state court after an appellate court ruled that a deadly weapon enhancement could not be applied to animal cruelty cases. His revised sentencing range was 2 to 20 years.

*General Deterrence*

Finally, a sentence at the high end of the Guidelines is necessary in light of the need to deter others and to protect the public from the Defendant. Berndt himself administered and led groups with sometimes dozens of members, and the co-conspirators discussed other groups that contained over 100 members. Given this, a significant sentence is necessary to deter individuals from engaging in similar conduct going forward.

*Upward Variance*

There are facts from which this Court could conclude that an upward variance is warranted. In general, the range calculated by the application of the Sentencing Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *See Rita v. United States*, 551 U.S. 338 at 350 (2007). According to the Sixth Circuit, "the Guidelines provide a transparent and predictable sentencing range for defendants who fall within the 'heartland' of average cases 'to which the Commission intends individual Guidelines to apply.'" *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) (*quoting Kimbrough v. United States,* 552 U.S. 85 (2007)). However, U.S.S.G. § 2G3.1 is not specific to animal crushing offenses. It is the guideline section for various obscenity-related offenses, including, *inter alia*, 18 U.S.C. § 2252B (misleading domain names) and 18 U.S.C. § 2252C (misleading words or digital images). *See* U.S.S.G. Appendix A.

Given their relative scarcity, it is difficult to assess what a "typical" animal crush case looks like. Most cases charged under 18 U.S.C. § 48 have been charged in the last two years, and involve individuals who were members of the same, or related, monkey torture Telegram groups as Berndt. One unrelated case involved a fifty-second video in which an individual performed oral sex on a dog. *See United States v. Vincent*, 2022 WL 2452301 (N.D. Ga. July 6, 2022).

Another involved an individual who decapitated a cat. *United States v. Phillips*, 2023 WL 3346096 (E.D. Okla. May 10, 2023). Compared to the defendants in *Vincent* and *Phillips*, defendant Berndt's conduct was noteworthy.

Even in comparison to a "typical" animal crush case, there are facts that distinguish Berndt. The species of animal tortured, the age of the monkeys, the number of videos at issue, and the fact that Berndt interacted directly with videographers all distinguish him. In addition, as already discussed, his desire for more extreme torture and for genital torture also set him apart. Finally, he engaged in this conduct over a long period of time, only stopping when he was contacted by law enforcement. These are all facts from which this Court could determine that a variance is warranted.

## **CONCLUSION**

The nature and circumstances of Berndt's offense are extreme. For this reason, a significant sentence of incarceration is necessary. A sentence of 46 months is the minimum sentence that will accomplish the goals of sentencing, although there are also facts from which this Court could find that an upward variance is warranted.


Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Div.
U.S. Department of Justice

*/s Adam C. Cullman*
Adam C. Cullman (KY #93912)
Special Assistant United States Attorney &
Senior Trial Attorney
Environmental Crimes Section
Environment and Natural Resources Div.
221 E. 4th St. Ste. 400
Cincinnati, Ohio 45244
*adam.cullman@usdoj.gov*

*/s Mark Romley*
MARK ROMLEY (CA #240655)
Trial Attorney
Environmental Crimes Section
Environment and Natural Resources Div.
999 18th St., Suite 370
South Terrace
Denver, CO 80202
mark.romley@usdoj.gov

*s/ Nicole Pakiz*
NICOLE PAKIZ (0096242)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Nicole.Pakiz@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December 2025, a copy of the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.